## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ANTHONY MORGAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CLEVELAND BIOLABS, INC., LEA VERNY, RANDY S. SALUCK, ALEXANDER ANDRYUSHECHKIN, DANIIL TALYANSKIY, ANNA EVDOKIMOVA, and IVAN FEDYUNIN,<br><br>　　　　　Defendants. | )<br>)<br>) Case No._____<br>)<br>)<br>)<br>) **COMPLAINT FOR VIOLATIONS OF**<br>) **THE FEDERAL SECURITIES LAWS**<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>) |

Plaintiff Anthony Morgan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE SUMMARY OF THE ACTION

1.　　Plaintiff brings against Cleveland BioLabs, Inc. ("Cleveland" or the "Company") and the members of Cleveland's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Cleveland will merge with Cytocom, Inc. ("Cytocom") through Cleveland's wholly owned subsidiary High Street Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2.　　On October 20, 2020, Cleveland and Cytocom issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated October 16, 2020

(the "Merger Agreement").  Upon closing of the merger, Cytocom stockholders are expected to own approximately 61% of the combined company's stock, while Cleveland stockholders are expected to own approximately 39% of the combined company's stock.

3.  On February 16, 2021, Cleveland filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Cleveland stockholders vote to approve the issuance of Cleveland common stock to Cytocom stockholders pursuant to the Merger Agreement ("Stock Issuance") and the change of control resulting from the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Cytocom management's financial projections, relied upon by the Company's financial advisor Cassel Salpeter & Co., LLC ("Cassel Salpeter") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Cassel; (iii) Cassel Salpeter's potential conflicts of interest; and (iv) the background of the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Cleveland stockholders need such information in order to make a fully informed decision whether to vote in favor of the Stock Issuance.

4.  It is imperative that the material information omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Cleveland.

10. Defendant Cleveland is a Delaware corporation, with its principal executive offices located at 73 High Street, Buffalo, New York 14203. Cleveland is a biopharmaceutical company developing novel approaches to activate the immune system and address serious medical needs clinical-stage biopharmaceutical company developing novel treatments for diseases of high unmet medical need. Cleveland's shares trade on the Nasdaq Capital Market under the ticker symbol "CBLI."

11. Defendant Lea Verny ("Verny") has been Board Chair of the Company since July 2016 and a director since April 2016.

12. Defendant Randy S. Saluck ("Saluck") has been a director of the Company since July 2016. Defendant Saluck also previously served as a director from May 2013 until April 2016.

13. Defendant Alexander Andryushechkin ("Andryushechkin") has been a director of the Company since July 2016.

14. Defendant Daniil Talyanskiy ("Talyanskiy") has been a director of the Company since June 2016.

15. Defendant Anna Evdokimova ("Evdokimova") has been a director of the Company since 2015.

16. Defendant Ivan Fedyunin ("Fedyunin") has been a director of the Company since August 2018.

17. Defendants identified in paragraphs 11-16 are referred to herein as the "Board" or the "Individual Defendants."

18. Non-Party Cytocom is a clinical-stage biopharmaceutical company developing novel immunotherapies targeting autoimmune, inflammatory, infectious diseases and cancers based on a proprietary platform designed to rebalance the body's immune system and restore homeostasis. Cytocom is developing therapies designed to elicit directly within patients a robust and durable response of antigen-specific killer T cells and antibodies, thereby activating essential immune defenses against autoimmune, inflammatory, infectious diseases, and cancers. Specifically, Cytocom has four programs in late-stage clinical development in Crohn's disease, Fibromyalgia, Multiple Sclerosis and Pancreatic Cancer. Cytocom's immunomodulatory technology restores the balance between the cellular (Th1) and the humoral (Th2) immune

systems. Immune balance is regulated through T-helper cells that produce cytokines. The Th1 lymphocytes help fight pathogens within cells like cancer and viruses through interferon-gamma and macrophages. The Th2 lymphocytes target external pathogens like cytotoxic parasites, allergens, toxins through the activation of B-cells and antibody production to effect to dendritic cells, which are natural activators of killer T cells, also known as cytotoxic T cells, or CD8+ T cells. Furthermore, the Cytocom technology antagonizes the Toll-like Receptors to inhibit pro-inflammatory cytokines.

19. Non-Party Merger Sub is a direct, wholly-owned subsidiary of Cleveland.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Cleveland is a biopharmaceutical company developing novel approaches to activate the immune system and address serious medical needs. Its proprietary platform of Toll-like immune receptor activators has applications in mitigation of radiation injury and immuno-oncology. Cleveland combines its proven scientific expertise and its depth of knowledge about its products' mechanisms of action into a passion for developing drugs to save lives.

21. Entolimod, a Toll-like receptor 5 ("TLR5") agonist, which Cleveland is developing as a medical radiation countermeasure ("MRC") for reducing the risk of death following exposure to potentially lethal irradiation from Acute Radiation Syndrome ("ARS") is Cleveland's most advanced product candidate. Other indications, including immunotherapy for oncology, have been or will be investigated as well. Entolimod as an MRC is being developed under the United States Food & Drug Administration's ("FDA") Animal Efficacy Rule for the indication of reducing the risk of death following exposure to potentially lethal irradiation occurring as a result of a radiation disaster. Cleveland believes that entolimod is the most efficacious MRC currently in development.

22. Cleveland has completed two Good Clinical Practices clinical studies designed to evaluate the safety, pharmacokinetics and pharmacodynamics of entolimod in a total of 150 healthy subjects. It has completed a Good Laboratory Practices ("GLP") randomized, blinded, placebo-controlled, pivotal study designed to evaluate the dose-dependent effect of entolimod on survival and biomarker induction in 179 non-human primates exposed to 7.2 Gy total body irradiation when entolimod or a placebo was administered at 25 hours after radiation exposure. Cleveland has also completed a GLP, randomized, open-label, placebo-controlled, pivotal study designed to evaluate the dose-dependent effect of entolimod on biomarker induction in 160 non-irradiated non-human primates. In 2015, following confirmation from the FDA of the sufficiency of Cleveland's existing efficacy and safety data and animal-to-human dose conversion, Cleveland submitted to the FDA an application for pre-Emergency Use Authorization ("pre-EUA") a form of authorization granted by the FDA under certain circumstances. Since 2015, the FDA has indicated that a biocomparability exercise was necessary to compare the entolimod formulation used to perform early studies with the entolimod formulation planned for stock piling under the pre-EUA. This exercise is complete, and the FDA agrees that for pre-EUA purposes, biocomparability has been demonstrated.

**The Proposed Transaction**

23. On October 20, 2020, Cleveland and Cytocom issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> WINTER PARK, Fla., Oct. 20, 2020 -- Cytocom, Inc. (Cytocom), a leading biopharmaceutical company in the area of immune-modulation, and Cleveland BioLabs, Inc., an innovative biopharmaceutical company developing novel approaches to activate the immune system, today announced that they have entered into a definitive merger agreement to combine their businesses in an all-stock transaction. Cytocom shareholders will have a majority position in the newly combined entity, which the parties anticipate will continue to be listed on the Nasdaq, and the initial Board of Directors for the combined company will consist

of four members selected by Cytocom and three members selected by Cleveland BioLabs. The Boards of Directors of both companies have approved the combination.

For Immune Therapeutics, Inc. (Ticker: IMUN) and its shareholders who hold a considerable stake in Cytocom this means that the value for all of the years of support and collaboration with Cytocom can be realized. The Cytocom platform technologies and product pipeline, in combination with Cleveland BioLabs, have the potential to drive significant future growth in Immune's shareholder value.

Each party to the proposed merger believes that the combined company will create near-term commercial opportunities in numerous areas of significant unmet medical needs including acute radiation injury, oncology, infectious disease, inflammation and autoimmune-mediated conditions, with multiple commercial, regulatory and clinical milestones expected over the next 12 to 18 months. Operating as "Cytocom, Inc." and under the leadership of Cytocom's experienced management team, the combined company will be positioned for consistent growth.

Overview

Michael K. Handley, President and Chief Executive Officer of Cytocom, stated, "Our merger with Cleveland BioLabs and its subsequent immune-focused platform will be a transformative growth opportunity for Cytocom and Cleveland BioLabs shareholders. We believe that the combination of these highly complementary late-stage pipelines will strengthen our position and advance our efforts to unlock the potential of immune-modulating agents in the treatment of serious medical conditions. Further, this merger will enhance our ability to become a recognized leader in immune-modulating treatments and builds on the momentum created by our recent acquisition of ImQuest Life Sciences. We plan to utilize the combined platform to further drive value with additional clinical and commercial products and continue to seek strategic partnerships and acquisitions."

Dr. Andrei Gudkov, Chief Scientific Officer of Cleveland BioLabs, said: "This is an exciting day for Cleveland BioLabs and a great opportunity for our stockholders. The merger with Cytocom will allow us to add the strength of our science and bright perspectives associated with Entolimod development in cancer treatment and radiation defense arenas with a string of immunomodulators developed by Cytocom to form a powerful blend of conceptually and scientifically aligned products. We believe that the merger with Cytocom is the ideal way to unlock the value of our technology platform and our lead drug candidate, Entolimod, and I look forward to seeing this exciting new therapy advance through the clinic."

Conditions

The proposed transaction is subject to customary closing conditions, including approval by the stockholders of Cleveland Biolabs, the shares of the combined

company being approved for listing on Nasdaq and a registration statement under the Securities Act becoming effective. Cytocom and Cleveland Biolabs expect the transaction to close during the first quarter of 2021.

**The Registration Statement Contains Material Misstatements and Omissions**

24. Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Cleveland's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Stock Issuance.

25. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the projections for Cytocom, utilized by the Company's financial advisor Cassel Salpeter in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Cassel Salpeter; (iii) the background of the Proposed Transaction; and (iv) Cassel Salpeter's potential conflicts of interest.

*Material Omissions Concerning Cytocom's Financial Projections and Cassel Salpeter's Financial Analyses*

26. The Registration Statement omits material information regarding Cytocom's financial projections, relied upon by Cassel Salpeter for its analyses.

27. For example, in connection with Cassel Salpeter's fairness opinion (upon which the Board relied), Cassel Salpeter reviewed and relied upon "financial projections with respect to the future financial performance of Cytocom . . . prepared by management of Cytocom, or the Projections" Registration Statement at 122-23. Additionally, Cassel Salpeter performed a net present value analysis of Cytocom utilizing the projected free cash flows of Cytocom through December 31, 2020. *See id*. at 125. The Registration Statement, however, completely omits any financial projections for Cytocom, including Cytocom's free cash flow projections.

28.

29. The Registration Statement describes Cassel Salpeter's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Cassel Salpeter's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Cleveland's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Cassel Salpeter's fairness opinion in determining whether to vote in favor of the Stock Issuance.

30. With respect to Cassel Salpeter's *Risk-Adjusted Net Present Value Analysis*, the Registration Statement fails to disclose (i) the projected free cash flows of Cytocom through December 31, 2030, used in the analysis; (ii) quantification of the terminal values; and (iii) quantification of the individual inputs and assumptions underlying the discount rates of 33.0% to 37.0% and 58.0% to 62.0%.

31. With respect to Cassel Salpeter's *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Cassel Salpeter.

32. Without such undisclosed information, Cleveland stockholders cannot evaluate for themselves whether the financial analyses performed by Cassel Salpeter were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Cassel Salpeter's opinion and analyses should factor into their decision whether to vote in favor of or against the Stock Issuance.

33. The omission of this information renders the statements in the "Opinion of the Financial Advisor to the Cleveland BioLabs Special Committee" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

34. The Registration Statement fails to disclose material information concerning the background of the Proposed Transaction.

35. For example, the Registration Statement fails to disclose whether the Company entered into non-disclosure agreements with parties identified in the Registration Statement as Companies A, B and C and, if so, whether these non-disclosure agreements contain standstill provisions or "don't-ask-don't waive" standstill provisions that preclude these counterparties from making a superior proposal for Cleveland.

36. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for Cleveland. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Registration Statement

37. Any reasonable Cleveland stockholder would deem the fact that a likely topping bidder may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

38. The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Cassel Salpeter's Potential Conflicts of Interest*

39. The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by Cassel Salpeter.

40. For example, the Registration Statement fails to disclose whether Cassel Salpeter provided financial services for or received fees from Cytocom in the two years prior to performing its fairness opinion.

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. The omission of this information renders the statements in the "Opinion of the Financial Advisor to the Cleveland BioLabs Special Committee" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Stock Issuance, Plaintiff and Cleveland's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Stock Issuance and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about (i) the projections for Cytocom, utilized by the Company's financial advisor Cassel Salpeter in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Cassel Salpeter; (iii) the background of the Proposed Transaction; and (iv) Cassel Salpeter's potential conflicts of interest. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Stock Issuance.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Cleveland within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cleveland, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Stock Issuance. They were, thus, directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Cleveland stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in h__ favor on behalf of Cleveland, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Stock Issuance, unless and until defendants disclose and disseminate the material information identified above to Cleveland stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 23, 2021

**LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*